# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15-CV-23884-JAL

GERTI MUHO

                    Plaintiff,

     v.

SERGIO MENDEZ, NORMA LINDSEY,
MENDEZ & MENDEZ P.A., CEM
INVESTMENTS LLC, ALICIA
CONSUEGRA, LISA S. WALSH, LEXIS II
LTD. LIZBETH BUCHBINDER

                Defendants.

_____/

FILED by ____ D.C.

OCT 2 3 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

## VERIFIED FIRST AMENDED COMPLAINT FOR VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961 ET SEQ. ET AL.

1) This is a Case about predatory lending and the illegal enterprise that predatory lending has spawned and established in South Florida, how the enterprise operates has adopted and how it operated in violation of State and Federal law by using—or misusing the very law forbidding it.

## THE PREDATORY LENDING ENTERPRISE ENGULFING SOUTH FLORIDA

2) RICO Defendant CEM Investments LLC is part of a family of companies run by Non-Party Jorge De La Ona who operates a group of companies known as predatory lending companies, or predatory lenders, as they are commonly referred. Non-party Jorge De La Ona is an attorney with a long and public history of operating in the predatory lending industry.

3) A predatory lender is a lender lending to people against their homes at a high interest rate, and, and this is key, a predatory lender is a lender that makes the high interest secured loan

preying the borrower does not repay the loan so that the predatory lender can take the property on the cheap at a foreclosure sale it ensures it will then hold. Let there be no mistake as to what a predatory lending scheme is: a predatory lending scheme is a supercharged form of mob-house lending; these loans are extortionate credit through and through as this Case will show. While these loans may be formatted to look different than smokehouse mob loans, these loans are enforced in the same way and by the same methods mobhouse loans are enforced—by criminal methods and by crime alone; only criminal enforcement can enforce thirty to fifty percent per annum secured loans; only crime openly committed, enforcing all loans, can generate such high rates of return, for the criminal operates without competition in a level the non-criminal aren't so willing to go. And while these loans aren't enforced by thugs without necks, they're enforced by reckless thugs nonetheless—how else would one explain such reckless acts as forging their own mortgages because Jorge De La Ona is off for thanksgiving and can't sign away the note; the thugs that enforce these mortgages however wear the clothes of officialdom—operate through bureaucrats, fearless of the repercussion of their acts and the laws they openly disregard, instilling fear and awe into all those they use to achieve their illegal ends as they move forward in enforcing their illegal loans—Plaintiff still can't get a homestead declaration hearing set because the RICO Enterprise has had its say to prevent that as discovery will show. And as this Case will show, while they are lawyers and judges—officers of the court, and while their enforcement imitates process of law, the enforcers of these loans aren't prepared---in fact they don't even respond, when confronted with even a mere motion by Plaintiff, instead choosing to violate a myriad more laws to avoid any real legal process, which to them is foreign entirely even while sitting in a court of law.

4)   Returning to the loans predatory lenders make and the repayments they seek to be paid from, it's not that the predatory lender doesn't want repayment of the loan by outright repayment of it by the borrower, it's that repayment of the loan is simply not in its interest based on how the predatory lender earns its fees from the loan; repayment just isn't that financially rewarding for the predatory lender, similar to the mob boss preferring to take over the business of its borrower and not mere repayment of the loan. RICO Defendant CEM Investments LLC—and the RICO Enterprise in general, intervened and thwarted Plaintiff's attempt, for example, to refinance the *30% a year* loan secured by his home (as Plaintiff then erroneously thought) by taking a 3% a year loan in stead to pay off the extortionate thirty percent per annum loan.

5)   Jorge De La Ona's Capital International Finance Inc., for example lent GM Capital Management Inc. for a two year loan four hundred and seventy five thousand dollars for fifty percent of the value of Plaintiff's home and kept one hundred thousand of that in fees up front, subsequently charging a mere twelve percent in interest per year thereafter on the principal which in two years time would give the lender the same amount the lender collected on the spot, up front, at the moment it made the loan.

6)   The Mortgage Broker setting up the deal is a family member of the Jorge De La Ona family and of the RICO Enterprise itself, and also serves as the Executive Director of the charity where as RICO Defendant Norma Lindsey herself serves as a member of the charity board, a charity whose glitzy photos amid local stars are a mere Google search away and freely available to the world. On numerous occasions the mortgage broker exclaimed how "the loan must be paid," that "there's no questioning this loan," and even on the evening of the closing warning Plaintiff that he had to pay THIS loan.

7)  Before closing on the loan, the Lender kept Plaintiff in the dark about the deal entirely, until one hour before closing, or until 3:30PM on the day before Thanksgiving, when the Lender chose to call Plaintiff, ask for a bunch of documents it did not need or want, and asked Plaintiff and Co to come and close the loan. For three weeks it had gone silent before that without any reason or explanation. As an aside, this thanksgiving even 3:30PM call might have been suspect to anyone with any sort of life but the entire scheduling had no meaning or significance to the Plaintiff at all. It turns out the purpose of the late thanksgiving call was that the lender, Capital International Finance, Inc., wanted to keep Plaintiff in the dark to the maximum extent possible, because it turns out the lender did not want Plaintiff to read the mortgage and the promissory note *before signing them on his home*.

8)  The lender did not care if Plaintiff read them afterword, it gave Plaintiff a copy of the documents it had signed—color coded them for illegal v. legal with yellow documents being illegal and white documents being those that would be subsequently sold off to HUD to whom the risk of the illegal contract would ultimately be shipped off on. But the Lender took great pains to prevent Plaintiff from reading the documents he signed until he signed them, but the lender had no problem giving Plaintiff the illegal documents he had signed to read at home; the Lender just didn't care about defenses to a contract Plaintiff might raise afterword—and for an illegal reason as this Case shows from the extortionate enforcements of the loan below. Defendant Alicia Consuegra told Plaintiff that aside from the interest rate, the loan was standard in all terms. Looking over the mortgage interest GM Capital Management, Inc. issued on Plaintiff's home, and wrongly at that, the mortgage interest documents are in fact standard in all terms, but they are standard in all terms not to secure extortionate promissory notes, but they are standard for mortgages requiring guidelines set by HUD that met those guidelines and that HUD

would insure and that HUD would guarantee against default. The terms of the mortgage interest otherwise are in direct conflict—not in standard congruence, with the terms of the promissory note the mortgage interest secured and could not legally exist to so openly violate by its direct requirements and terms.

9)   Plaintiff first reviewed the documents *after* the Lender filed suit against his home, a five second look at the documents the lender took great trouble to schedule the signing without giving Plaintiff time to read the documents, and one is shocked—shocked to learn just how unenforceable it is that the loan was. See Exhibit 4 Plaintiff's 12(b)6. Who loans out almost five hundred thousand with such blatantly illegal contract that would be unenforceable in any civilized court.

10) The loan is entirely unenforceable in any court of law for a number of reasons—other than standard contract defenses, and in addition to as is in this Case that the mortgage assignment itself was also forged and in addition to as in this Case that the mortgage was granted to Capital International Finance Inc. by an entity (GM Capital Management Inc.) without authority to grant the mortgage interest securing the loan with Plaintiff's home. (GM Capital Management Inc. lacked the authority and Plaintiff had never issued a power of attorney to GM Capital Management, Inc. for GM Capital Management, Inc. to use Plaintiff's homestead as security for a loan). The loan is pathetically unenforceable because, as noted above, the promissory note charges thirty percent interest per annum when computed with fees, and well over the maximum eighteen percent legal limit any promissory note must not surpass by law, inclusive of fees and penalties and all), while being coupled with a mortgage interest of the type issued specifically under the guidelines that ensure homeowner protection and more that HUD requires before it insures a mortgage interest and a loan, guaranteeing repayment entirely to the lender on the

qualified mortgage loan; the mortgage interest securing the thirty percent per annum loan makes

explicit it violates the same homeowner provision protecting homeowners the mortgage interest

embraces and requires under the loan—which make the mortgage interest qualifying under HUD

for full HUD guarantee, insurance and purchase by HUD of that loan.

11) The Lender used a HUD mortgage interest document to secure a thirty percent per

annum promissory note—-ten times the interest of mortgages HUD insures and way above the

limit allowed by law, not by error, but because it used the mortgage interest to secure cheap

financing by selling off the mortgage interest to HUD as a qualifying mortgage interest from

which the Lender secured financing at one tenth the thirty percent it charged Plaintiff on the

Loan. Of Course the Lender never disclosed to HUD that its mortgage interest wasn't securing a

non-qualifying promissory note that wasn't a safe loan—but far from it, and in fact that the

mortgage interest was securing a loan that made the mortgage interest void—the transaction

void, the entire thing illegal on its face, and the mortgage it sold HUD worthless as collateral,

making Lender's actions outright criminal fraud.

12) This Case below details how the Lender makes a business lending almost half a

million dollars on an illegal contract that it void and illegal on its face, and one that would be

ruled illegal under any court of law. This Case details how an illegal enterprise can write it's own

law, and operate under it, and even enforce it in a court of law, even though the law it enforces is

illegal and blatantly in violation of the law.

## THE RICO ENTERPRISE'S ENFORCMENT OF ITS ILLEGAL CONTRACTS AGAISNT PLAINTIFF VIOLATES THE RACKTEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

13)     Over the course of the past year defendant RICO Defendant Sergio Mendez and

his RICO co-defendants and co-conspirators have forged, defrauded, extorted, and otherwise

tortuously injured plaintiff Gerti Muho in their effort to enforce the illegal predatory loans on

which their business is found and operates by means of a plan they conceived and substantially executed in the South Florida. The RICO Enterprise enforcing an illegal law that gives rise to their illegal profiteering in violation of the law is comprised of, among others, lawyers, led by RICO Defendant Sergio Mendez and his RICO co-defendant Mendez & Mendez law firm, local civil and criminal court judges RICO Defendant Norma Lindsey and Defendant Lisa S Walsh, notary publics Alicia Consuegra and Lizbeth Buchbinder, and by RICO Defendant CEM Investments LLC. These conspirators are collectively referred to herein as the "RICO Defendants." Their conspirators in the enterprise include, among others, lawyer Jorge De La Ona, De La Ona's myriad of shell companies that fund, support, and launder the proceeds the RICO enterprise earns, mortgage brokers and property appraisers, and lawyers including Gabriel Bonder, and lawyers and office managers from Graham Legal, P.A.

     14)     The RICO enterprise's ultimate aim has been to steal Plaintiff's home from him. To effect its aim the RICO enterprise has feigned, forged, and fraudulently filed with the office of local property records a mortgage interest it did not own, never owned, and had no right to file; it has conspired with local officials and filed an illegal foreclosure action on the fake mortgage that it planned to carry out criminally through a farce legal proceeding RICO enterprise defendant civil court judge Norma Lindsey would herself oversee illegally to a predetermined adjudication for the RICO enterprise; it has submitted forged and fabricated documents, it has filed false affidavits, lied repeatedly under oath and in sworn statements filed with the local court, and it has conspired with criminal court judge Lisa Walsh who without right or authority issued the RICO enterprise a judgment to foreclose on Plaintiff's home in an ex-parte session held behind closed doors.

15)    The RICO Defendants' conduct violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., with predicate acts of extortion, racketeering, mortgage fraud, mail and wire fraud, and money laundering, among others. In addition, Defendants' conduct constitutes common law fraud, abuse of process, trespass to chattels, and civil conspiracy, among others. As a result, Defendants' misconduct entitles Plaintiff to injunctive relief precluding Defendants from continuing their illegal proceeding against Plaintiff's home and assets and precluding Defendants from continuing their illegal possession of a mortgage interest in Plaintiff's home, injunctive relief precluding Defendants from attempting to enforce any judgment emanating from the sham proceedings against Plaintiff in the local court, damages, and other relief.

## PARTIES AND RELEVANT NON-PARTIES
**Plaintiff.**

16)    Plaintiff Gerti Muho ("**Plaintiff**") is an individual residing in Miami, Florida.

**Rico Defendants.**

17)    The defendants listed in paragraphs 6 through 10 are the persons who have conspired to engage in a pattern of racketeering activity, have each committed numerous criminal acts as part of their scheme to defraud and extort Plaintiff, and have each participated in the operation or management of the criminal enterprise. These defendants shall be referred to herein as the "**RICO Defendants**."

18)    Sergio Mendez is an individual with known address located at 7100 S.W. 57th Court, Suite 202, South Miami, Florida 33143.

19)    Mendez & Mendez P.A. is a law firm located at 7100 S.W. 57th Court, Suite 202, South Miami, Florida 33143. Norma Lindsey is a director of Boys & Girls Clubs of Miami-Dade

and a civil court judge with known address located at 73 W Flagler St. St. 1104, Miami, FL 33130.

20)     Norma Lindsey is an individual with known address located at 73 W Flagler St # 1104, Miami, FL 33130

21)     CEM Investments LLC is a Florida limited liability company located at 7400 S.W. 57th Court, Suite 201, South Miami, Florida 33143.

22)     Alicia Consuegra is an individual with known address located at 7400 S.W. 57th Court, Suite 201, South Miami, Florida 33143.

**Non-RICO Defendants.**

23)     Lisa S. Walsh is a state circuit judge in the circuit criminal division of the Miami-Dade circuit with known address located at 1351 N.W., St. 305, 12th Street, Miami, FL 33125

24)     Lexis II Ltd. is a Cayman Islands company with known address located at P.O. Box 709, Zephyr House, 122 Mary St. Grand Cayman KYI-1107, Cayman Islands.

25)     Lizbeth Buchbinder is an individual with known address located at 7400 S.W. 57th Court, Suite 201, South Miami, Florida 33143.

**Non-party Conspirators.**

26)     Alex Rodriguez-Roig is a family member of CEM Investments LLC and a mortgage broker who linked Plaintiff with the CEM family, and also serve as the executive director of Boys & Girls Clubs of Miami-Dade; his last known address located at 7400 S.W. 57th Court, Suite 201, South Miami, Florida 33143.

27)     Jorge De La Ona is a lawyer and president of Capital International Finance Inc. with known address located at 7400 S.W. 57th Court, Suite 201, South Miami, Florida 33143.

28)     Gabriel Bodner, is an attorney with known address located at 1444 Biscayne Blvd., Suite 306, Miami, Florida 33132.

29)     Amanda Soler is an office manager with law firm Graham Legal, P.A. with known address located at 814 Ponce de Leon Blvd, St. 410, Coral Gables, Florida 33134. Graham Legal, P.A is a foreclosure defense law firm Plaintiff's aide had contacted via the law firms contact us form on its website, where the aide had included identifying information about the case with the message that he presumably sent to a number of law firms via their web forms seeking an attorney who could help represent Plaintiff's interest in the Case.

30)     Carol Gardner is an individual who made requests on behalf of CEM Investments LLC to Plaintiff for payment on the loan. On the fourth or so payment on the loan, Ms. Gardner threatened via e-mail to turn over the case to RICO Defendant Sergio Mendez to foreclose if Plaintiff did not prepay a month in advance, fifteen days before payment was even due for the month. Plaintiff pre-paid.

## SUBJECT MATTER JURISDICTION AND VENUE

31)     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, 1332, and 1337 and under 18 U.S.C. § 1964(c). Plaintiff's first claim for relief arises under 18 U.S.C. § 1961 et seq., as hereinafter more fully appears. This court has additional jurisdiction under 28 U.S.C. § 1343 because defendants' conspiracy has impeded, hindering, obstructed, and defeated the due course of justice. There is also complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff's state law claims arise out of the same case or controversy as its federal law claims, as all claims in this action arise out of a common nucleus of operative facts. Thus, this Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

32)    Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as a substantial number of the events giving rise to this action occurred in this District, and also under 18 U.S.C. § 1965.

## PERSONAL JURISDICTION

33)    Exercise of jurisdiction over Sergio Mendez and his law firm Mendez and Mendez P.A. is proper pursuant to 18 U.S.C. § 1965(b). Mendez has transacted business and engaged in tortious conduct in the United States and Florida, which gives rise in part to Plaintiff's claims. Among other things, Mendez has engaged in a conspiracy that has produced an illegal judgment against a Florida resident issued by a criminal local judge against Plaintiff in violation of Plaintiff's rights under the law and under the Constitution. Mendez has also engaged in intentional, wrongful, illegal, and/or tortious acts the effects of which Mendez knew and intended would be felt in the United States and Florida. For example, Mendez has forged and lied on documents he has filed an illegal and unauthorized case to steal Plaintiff's home. Has committed numerous instances of extortion, conspiracy, racketeering, and money laundering.

34)    Exercise of jurisdiction over CEM Investments LLC is proper pursuant to 18 U.S.C. § 1965(b). CEM Investments LLC has transacted business and engaged in tortious conduct in the United States and in Florida, which gives rise in part to Plaintiff's claims. Among other things, CEM Investments LLC has forged and registered notes, it has sought and it has received financing from banking institutions by fraud, and it has committed numerous acts of extortion and numerous acts of mail and wire fraud. The Defendant has also committed numerous instances of extortion, conspiracy, racketeering, and money laundering.

35)    Exercise of jurisdiction over civil court judge Norma Lindsey is proper pursuant to 18 U.S.C. § 1965(b). Civil court judge Norma Lindsey has transacted business and engaged in

tortious conduct in the United States and Florida which gives rise in part to Plaintiff's claims. Among other things the defendant has conspired to commit and has committed two or more acts of extortion, and the defendant has conspired to commit and has committed two or more action constituting a violation of rights guaranteed under the constitution under color of law, two or more predicate acts constituting a conspiracy against rights guaranteed under the Constitution to all citizens by law, money laundering, and the Defendant has committed two or more instanced of mail and wire fraud. The Defendant has moreover committed conspiracy, racketeering, and money laundering in violation of US law.

36)     Exercise of jurisdiction over the remaining defendant is proper because they are all Florida citizens and because they all have transacted business and engaged in tortious conduct in the United States and Florida which gives rise in part to Plaintiff's claims.

## FACTUAL BASIS FOR CLAIMS

37)     Plaintiff purchased free and clear 'fee simple' title to his home in September 2013, as legally described below. Plaintiff has at all times since acquiring free and clear title to the property remained the full owner of the property, at all times in complete owning the property that was as free and clear as on the day free and clear title to his property was to him. Never giving a single soul permission to enter his home without supervision, let alone giving someone the right to sell and foreclose on his home.

CONDOMINIUM UNIT NO. 5303, OF MARQUIS, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM RECORDED IN OR BOOK 26920, PAGE 3495, AND ALL EXHIBITS AND AMENDMENTS THEREOF, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

38)     RICO Defendant CEM Investments LLC feigned forged and counterfeited an assignment of a mortgage interest in Plaintiff's home to itself. RICO Defendant Alicia Consuegra, the notary public who had notarized a promissory note and other documents for GM Capital Management Inc. falsely signed as Jorge De La Ona a document purporting to be an assignment of a mortgage note from Capital International Finance Inc. to CEM Investment Investments LLC. See *Exhibit 1*. Defendant Lizbeth Buchbinder feigned forged and signed the name and signature of a purported witness to the signing by the name of Michelle Rice as one of the two witnesses witnessing the signing of the alleged assignment by Jorge De La One being signed in reality by RICO Defendant Alicia Consuegra signing falsely in Jorge De La Ona's name. Defendant Lizbeth Buchbinder herself served as the second witness of the signing and notarized the forged assignment of the mortgage note to RICO Defendant CEM Investments LLC.

39)     RICO Defendant CEM Investments LLC then registered the feigned, forged, and counterfeit mortgage interest it received with the local property records against Plaintiff's home, violating, among other things, *Florida Statute § 713.31*, entitling Plaintiff to punitive damages of about $500,000 under this statute alone, and *Florida Statute § 817.535*, making the recording a second degree felony giving Plaintiff a civil cause of action under this criminal statute also under State law.

40)     RICO Defendant Sergio Mendez conspired with RICO Defendant Norma Lindsey that RICO Defendant Norma Lindsey would preside over the foreclose case RICO Defendant Sergio Mendez would bring for RICO Defendant CEM Investments LLC, and that RICO Defendant Norma Lindsey would set aside and violate the requirements of Florida Statute § 702.015 (3),(6) requiring her to sanction a Plaintiff bringing a foreclosure action without

"identify[ing] with specificity, the document grant[ing] [i]t the authority to act on behalf of the person entitled to enforce the [promissory] note," RICO Defendant Sergio Mendez also conspired with RICO Defendant Norma Lindsey that the latter would rule for CEM Investments LLC in any contested rulings that might arise in the case. RICO Defendant Judge Norma Lindsey sits on the board of Boys & Girls Club of Miami-Dade, an organization run by a family member of RICO Defendant CEM Investments LLC and RICO Defendant Sergio Mendez.

41)     RICO Defendant Sergio Mendez for RICO Defendant CEM Investments LLC, again violating the Florida criminal statutes listed above, then filed a notice of lis pendens with the local property records against Plaintiff's home. *Florida Statute § 48.23(1)(c)1a*, on notices of lis pendens states that "[a] notice of lis pendens must contain the ...names of the parties." Plaintiff named in its notice of lis pendens as defendants "GM Capital Management, Inc., Marquis Miami Condominium Association, Inc.; John Doe and All Others in Possession."

42)     RICO Defendant Sergio Mendez for RICO Defendant CEM Investments LLC filed a foreclosure complaint in early June 2015 attempting to foreclose on Plaintiff's home claiming, falsely, that the suit was one to "foreclose a mortgage on NON-HOMESTEAD real property," and claiming, fraudulently, alleged "the note and mortgage were assigned from Capital International Finance, Inc. to [RICO that Defendant CEM Investments LLC] by virtue of an Assignment of Mortgage [it] attached as [an] Exhibit" with the unverified complaint it filed to foreclose on Plaintiff's home. The exhibit he referenced and included with his complaint that purported to show an assignment of the note and mortgage to RICO Defendant CEM Investments LLC, was the assignment of the mortgage interest in Plaintiff's home that Defendant Alicia Consuegra fictiously and fraudulently had created forged and signed in the name of Jorge De La Ona, which Defendant Lizbeth Buchbinder had fraudulently notarized as pubic

notary and sole witness to the signing, using a fictitious name for a second witness. See Exhibit 1.

43)     The most cursory review by an entirely untrained eye of the half a page assignment of mortgage Defendants Alicia Consuegra and Lizbeth Buchbinder counterfeited for RICO Defendant CEM Investments LLC shows, moreover, that he assignment of mortgage included as an exhibit in support of the false claim that Plaintiff held the mortgage shows no such thing. Contrary to RICO Defendant Sergio Mendez's claim that the note and mortgage were assigned to RICO Defendant CEM Investments LLC "by virtue of an Assignment of Mortgage," the counterfeit assignment of mortgage does not assign the promissory note to RICO Defendant CEM Investments LLC; it assigns to RICO Defendant CEM Investments LLC only "a certain mortgage [together with an] Assignment of Leases. Rents and Profits, [also!] recorded" on Plaintiff's home.

44)     Under another Judge, without more, RICO Defendant Sergio Mendez would have been sanctioned for bringing for RICO Defendant CEM Investments LLC a suit to foreclose on a property it had no right to foreclose upon, suing upon allegations made by a unverified complaint that was outright contradicted by the Exhibits it based its support on; but having pre-conspired with fellow board member RICO Defendant Judge Norma Lindsey to set aside and violate the requirements of the Florida Statute requiring a Plaintiff "to establish, through admissible evidence, its [ownership] of the note and mortgage" *BAC Funding Consortium Inc. v. Ginelle Jean-Jacques, et al.* 28 So.3d 936 (2010), RICO Defendant Sergio Mendez filed a counterfeit assignment of mortgage as proof of its client's ownership of the promissory note entitling it to foreclose on Plaintiff's home. "Because the exhibit to U.S. Bank's complaint conflicts with its allegations concerning standing and the exhibit does not show that U.S. Bank has standing to

foreclose the mortgage, U.S. Bank did not establish its entitlement to foreclose the mortgage as a matter of law." Id. (citing e.g. *Hunt Ridge at Tall Pines, Inc. v. Hall*, 766 So.2d 399, 401 (Fla. 2d DCA 2000); *Blue Supply Corp. v. Novos Electro Mech., Inc.*, 990 So.2d 1157, 1159 (Fla. 3d DCA 2008); *Harry Pepper & Assocs., Inc. v. Lasseter*, 247 So.2d 736, 736-37 (Fla. 3d DCA 1971)).

     45)    RICO Defendant Sergio Mendez and his RICO Co-defendant Mendez and Mendez P.A. both are well known to have founded their business on the proceeds of racketeering and corruption of local officials and local Miami-Dade courts that they have for years specialized on, making them a target for close oversight and sanctions by any judge not in it to win it with them before their filings with the court. See e.g. *Velasquez v. Ettenheim*, Appellate Opinion No. 3D11-2615 (May 9, 2012), where a unanimous opinion was issued stating RICO Defendant Sergio Mendez had lied to the lower court about the "pertinent statute, the applicable rule, and the reported case ..." to steal trust proceeds he had no entitlement of, after an ex-parte hearing was held in the lower court where RICO Defendant Sergio Mendez lied to the trial court about having given notice to the twenty-three lien holders that would have opposed his theft and their loss; See further *Lezcano v. In Re: Estate of Exzun Lazaro Hidalgo*, Appellate Opinion No. 3D11-714 (April 25, 2012), where RICO Defendant Sergio Mendez had removed a Mrs. Lezcano from serving as the Trustee of her deceased brother's estate "without notice or an evidentiary hearing, 'the ruling did not meet even the most rudimentary requirements of due process.' [citations].We reverse and remand with instructions to reinstate Lezcano as personal representative of the estate and co-trustee of the trust, and discharge Mr. Mendez as curator of the estate." (emphasis added). RICO Defendant Sergio Mendez is notoriously known as one of

the most wanted thieves stealing trust assets under their guardianship and listed as such in with the National Stop Guardian Abuse Organization. See *Exhibit 3.*

46)      RICO Defendant Sergio Mendez's claims that the note and mortgage were assigned to RICO Defendant CEM Investments LLC "by virtue of an Assignment of Mortgage" are on their face untrue and lies, and give RICO Defendant CEM Investments LLC no right to foreclose on Plaintiff's home. As Plaintiff has learned and as the assignment of the promissory note included as Exhibit 4 evidences, the reason RICO Defendant Sergio Mendez failed to file an assignment of the promissory note to RICO Defendant CEM Investments LLC is that the promissory note was never assigned to RICO Defendant CEM Investments LLC; Jorge De La Ona himself it appears assigned the promissory note purportedly assigned to RICO Defendant CEM Investments LLC to Defendant Lexis fund, a Cayman company.

47)      RICO Defendant Sergio Mendez filed its foreclosure complaint in June 2015 against the same parties it named in its notice of lis pendent that it had fraudulently filed with the local property records: GM Capital Management, Inc., Marquis Miami Condominium Association, Inc.; John Doe and All Others in Possession. RICO Defendant Sergio Mendez for RICO Defendant CEM Investments LLC. Plaintiff received a copy of the lawsuit shortly after at his home.

48)      And on June 25, 2015 RICO Defendant Mendez and Mendez P.A. agreed via e-mail to allow "Gerti Muho … an extension of time of thirty days to [respond]." Yet after Gerti Muho responded with a motion to dismiss for failure to state a claim, which exposed the RICO Enterprise itself to an existential risk and not just on the case against Plaintiff, and after Plaintiff also filed a notice of homestead, which according to local court rules meant the case could proceed no further before RICO Defendant Judge Norma Lindsey, requiring instead that RICO

Defendant CEM Investments LLC proceed with its case under different procedures dealing with cases seeking foreclosure on homestead property, RICO Defendant Sergio Mendez filed a motion and scheduled a five minute hearing seeking a judgment of default against GM Capital Management, Inc.

49)      RICO Defendant Sergio Mendez's motion for default judgment and its scheduling of a five minute hearing before RICO Defendant Norma Lindsey were outright illegal; as stated Plaintiff had issued the RICO Defendants legal notice that the property was his homestead; making it illegal to continue to proceed with a case for foreclosure on non-homestead property.

50)      RICO Defendant Sergio Mendez's motion for default judgment and its scheduling of a five minute hearing before RICO Defendant Norma Lindsey were illegal even in a proceeding to foreclose non-homestead property (this was not but even it if had been—it was not). But even in a foreclosure against non-homestead property RICO Defendant Sergio Mendez had to meet the requirements of Florida Statute § 702.10, requiring the RICO Defendant to file and serve on GM Capital Management Inc. "an order to show cause for the entry of final judgment in a foreclosure action" and not a motion it never served, and that its order to show cause include "the date and time for a [full] hearing [on the order] to show cause" and that the order further "[s]tate[d] that the filing of defenses by a motion, a responsive pleading, an affidavit, or other papers before the hearing to show cause that raise a genuine issue of material fact which would preclude the entry of summary judgment or otherwise constitute a legal defense to foreclosure shall constitute cause for the court not to enter final judgment," that it further "[s]tate[d] that a defendant ha[d] the right to file affidavits or other papers before the time of the hearing to show cause and may appear personally or by way of an attorney at the hearing," that it further "[s]tate[d] that, if a defendant file[d] defenses by a motion, a verified or sworn

answer, affidavits, or other papers or appears personally or by way of an attorney at the time of the hearing, the hearing time [not a five minute hearing] will be used to hear and consider whether the defendant's motion, answer, affidavits, other papers, and other evidence and argument as may be presented by the defendant or the defendant's attorney raise a genuine issue of material fact which would preclude the entry of summary judgment or otherwise constitute a legal defense to foreclosure," and lastly that it also "[s]tate[d] that, if a defendant fails to appear at the hearing to show cause or fails to file defenses by a motion or by a verified or sworn answer or files an answer not contesting the foreclosure, … the court may enter a default against such defendant and, if appropriate, a final judgment of foreclosure ordering the clerk of the court to conduct a foreclosure sale;" that same statute, moreover, required that the court, before issuing an order to show cause directed at GM Capital Management, Inc., it was required to first immediately review the request itself [for the order to show cause] and the court file in chambers and without a hearing, [and only after] find[ing] that the complaint [wa]s verified[,was not], complie[d] with s. 702.015, [did not] and alleges a cause of action to foreclose on real property" could issued the requested order to show cause.

51)    RICO Defendant Sergio Mendez's motion for default judgment and its scheduling of a five minute hearing before RICO Defendant Norma Lindsey was factually improper, and illegal, aside from being procedurally illegal by being filed in the wrong court, by not following proper procedures even in the wrong court, and by scheduling a five minute hearing for a final hearing in violation of *local court no.11-06* specifically excluding from five minute hearings motions requesting final judgments. RICO Defendant Sergio Mendez's motion for default judgment was based on untrue facts because Plaintiff had in fact actually filed his response to the

action; a party to a lawsuit that does not like a response cannot simply ignore that response and file for default as if that response did not exist.

52)     RICO Defendant Sergio Mendez's motion for default judgment was also fraudulent. It claimed "[o]n June 25, 2015, "Roman Kravchenko" requested an extension to file an answer on behalf of "Gerti Muho," whereby Plaintiffs counsel agreed to an extension on or before July 15, 2015," which is an outright false statement. Roman Kravchenko wrote verbatim to Daniel J. Mendez that "[p]er our conversation, in the above referenced action Gerti Muho will ask the court for an extension of time of thirty days to file an answer, and now asks you whether or not you intend to oppose his request." And the RICO Defendant's motion for default judgment was outright criminal claiming, moreover, that "[o]n July 15, 2015, "Gerti Muho" [responded]" but ""Gerti Muho" is an individual who is not named defendant in this action and is not a licensed attorney in Florida."

53)     RICO Defendant Sergio Mendez's motion claimed in the most scandalous fashion that Gerti Muho, the person who owned the property, the person who was a named party on the lis pendens RICO Defendant Sergio Mendez had filed, the person who was a named party on the complaint RICO Defendant Sergio Mendez had filed, a complaint that filed in-rem to "[determine] title to property and the rights of ... all persons at any time dealing with them or with the property upon which the court had adjudicated." *R.H. Graveson, Conflict of Laws* 98 (7th ed. 1974), and a person whom RICO Defendant Sergio Mendez himself had agreed to give more time to respond at first, before the RICO Defendant then determined the response was good for him and his enterprise, and decided that extortion and robbery were a much better way for him and for the RICO Enterprise to proceed thereon.

54)     After Plaintiff responded with a motion to dismiss for failure to state a claim,

exposing the RICO Enterprise itself to an existential risk and not against Plaintiff alone, and after

Plaintiff gave notice of homestead, requiring RICO Defendant Judge Norma Lindsey to cease

whatever right she may have ever had to oversee the case and requiring RICO Defendant CEM

Investments LLC to proceed with its case under procedures set for case seeking foreclosure on

homestead property, RICO Defendant Sergio Mendez RICO Defendant CEM Investments LLC

conspired yet again with RICO Defendant Judge Norma Lindsey and Defendant Judge Lisa S.

Walsh deciding that after RICO Defendant Judge Norma Lindsey would issue a default against

GM Capita Management Inc. alone, summary judgment against all parties would be issued by

Defendant criminal court Judge Lisa S. Walsh. Presumably summary judgment would be issued

to the enterprise under *Florida Statute § 702.065(1),* which allows for final summary judgment

in an "uncontested mortgage foreclosure proceedings in which the mortgagee waives the right to

recoup any deficiency judgment, [giving] the court [the right to] enter final judgment within 90

days from the date of the close of pleadings[, whereas a] mortgage foreclosure proceeding is

uncontested if an answer not contesting the foreclosure has been filed or a default judgment has

been entered by the court."

55)     A new conspiracy between defendants was required given RICO Defendants

could no longer proceed before RICO Defendant Judge Norma Lindsey after Plaintiff had put

them both on notice that the property in question was his homestead, and that the foreclosure

action was not one for non-homestead. Rudimentary rules of proper procedure moreover

required RICO Defendant Judge Norma Lindsey to follow procedure before issuing a default;

and local rules forbade RICO Defendant Judge Norma Lindsey from holding a five minute

hearing on a motion for default, as they forbade her from presiding over the case in the first place

after she received proper notice of homestead, which notified her she could proceed no more. And it's unthinkable what right or authority a criminal court judge had or could be thought to have had to issue summary judgment on a five-minute hearing—forbidden by all rules of all courts. A new conspiracy was required because absent some tacit agreement not only would the two judges be shocked by the requests to violate the most basic of laws they oversaw, but RICO Defendant Sergio Mendez himself could not have requested what he sought unless he knew in advance the respective judges would bar him from practice for life for the things he sought from their respective courts.

56)    Plaintiff first and foremost had filed an answer and a response the RICO Defendants had received as they admitted in their motion for default but did not want and wanted to ignore. Second, unless an answer not contesting the foreclosure had been filed with the Court (it had not—the response had claimed the enterprise had no claim to proceed on, summary judgment could issue only after "a default judgment had been entered by the court." A default judgment could only be entered by the court, however, as per the procedure outline above: an order to show cause needed to issue and be served, a full hearing scheduled and held, and an in-camera review finding the complaint to be verified [this was not], had complie[d] with s. 702.015, [had not] and alleged a cause of action to foreclose on real property (it did not). RICO Defendant Sergio Mendez and RICO Co-defendant CEM Investments LLC also never waived their right to a deficiency judgment.

57)    At the five-minute hearing on the motion for default Plaintiff appeared in person to oppose the motion for default. Plaintiff cited his answers and his response and stated that RICO Defendant CEM Investments LLC had filed no proof for their claim that Plaintiff was not a Florida licensed attorney, had waived their right to oppose, and that in any event their claim

that Plaintiff was not a party to the case was patently untrue and that it was outright fraud. RICO Defendant Mendez and Mendez P.A. repeated blindly as if under seizure what they claimed in their motion: that "Gerti Muho is an individual who is not a named defendant in this action." RICO Defendant judge Norma Lindsey granted the motion for default after (i) Plaintiff could not provide her with a Florida bar card, after (ii) warning Plaintiff that representing a corporation as an unlicensed attorney was a felony, and after (iii) stating that the judgment in any event wasn't against Plaintiff but against the corporation only.

58)     Defendant criminal court judge Lisa S. Walsh, holding a special corrupt sitting in the civil court building behind closed doors without explanation or cause, issued RICO Defendant CEM Investments LLC a final order in foreclosure.

59)     RICO Defendant CEM Investments LLC by its attorney RICO Defendant Sergio Mendez filed a motion for summary judgment the following day, repeating the same violations of local rules and law as previously, and again scheduled a five minute hearing on the motion for summary judgment specifically not allowed under local rules of court and law. Again the RICO Defendants claimed falsely that "Gerti Muho is an individual who is not a named defendant in this action." Again the RICO Defendants outright ignored the responses and the motions Plaintiff had filed with the court.

60)     Plaintiff also failed to come close to anything resembling the standard for summary judgment, which is that "a plaintiff mov[ing] for summary judgment before the defendant has filed an answer, [has] "the burden [to] make it appear to a certainty that no answer which the defendant might properly serve could present a genuine issue of fact." *BAC Funding Consortium Inc. v. Ginelle Jean-Jacques, et al.* 28 So.3d 936 (2010) (string cite).

61)     And in its motion it requested summary judgment against GM Capital

Management, Inc. alone., claiming its failure to respond had already led and resulted in a judicial

default. There isn't a substantive or procedural law the motion didn't violate—from local rules of

procedures to the most sacred of Constitutional principles and natural rights of nature and law.

On the day of the hearing, Plaintiff arrived to find locked doors and was kept out under a

showing of force. Ten minutes after the hearing had been set to begin however, RICO Defendant

Sergio Mendez walked out and handed Plaintiff a order granting summary judgment against

"GM Capital Management, Inc., Marquis Miami Condominium Association, Inc.; John Doe and

All Others in Possession aka Gerti Muho," (emphasis added), and setting a date of sale in

foreclosure for October 16, 2015.

62)     On the elevator ride down RICO Defendant Sergio Mendez told Plaintiff that "

pay the mortgage, bro—no way out of this 'cept it" and that " you wanna play lawyer with the

big boys," finishing off before walking away by adding "[chuckle] … I own them all my friend, I

own them all."

63)     Plaintiff filed a motion to reconsider and scheduled a hearing on it for September

22, 2015. On September 9, 2015 Plaintiff was contacted by Amanda Soler, an office manager

with law firm Graham Legal, P.A., asking Plaintiff to call to schedule a hearing for a

consultation with the lawyers at their firm who wanted to assist Plaintiff with the case RICO

Defendant Sergio Mendez had filed trying to foreclose on his home. Plaintiff called the law firm,

discussed the case for a few minutes, and was told by the lawyer to note to Amanda to schedule

the meeting as an emergency as soon as possible in the next day or so.

64)     Amanda called Plaintiff back three or four days later at 4pm and immediately

began questioning Plaintiff about his rights to his home, starting off the call by asking "how did

you get it?" before telling Plaintiff repeatedly that it was all over and that they had already won. Plaintiff then told Amanda that as long as RICO Defendant Judge Norma Lindsey granted his motion to intervene that Plaintiff had by then also filed in the case with the court, then the judgment in foreclosure naming Plaintiff as a Defendant wouldn't be valid as against him, given the granting of his motion to intervene would mean Plaintiff had not been a party to the proceeding before. Amanda hung up and disappeared shortly after hearing this and was never against heard from.

65)      By the time of the hearing Plaintiff had realized that granting his motion to intervene would make Plaintiff a party, where otherwise he was not, and that Plaintiff was a party, was named in the order as a party, and had been a party at all times, and any questions on that matter were a product of fraud and were not legitimate questions that needed to be decided by the court.

66)      Having conspired with Amanda, the office manager offering legal advice on conclusions of law over telephone calls, to have Amanda call Plaintiff and pretend to be interested in helping Plaintiff, where she was not as it showed, RICO Defendant Sergio Mendez learned from Amanda that Plaintiff believed that should the judge grant Plaintiff his motion to intervene then Plaintiff would see the judgment in foreclosure naming Plaintiff as a Defendant as invalid against him for being issued prior to the court's granting Plaintiff of his motion to intervene in the case thereof. RICO Defendant Sergio Mendez then conspired with RICO Defendant Judge Norma Lindsey whom apparently he owned and pre-arranged with his RICO Co-defendant to have the latter deny Plaintiff's motion to intervene at the hearing scheduled on the motion to set aside the summary judgment scheduled for September 22, 2015.

67)      At the hearing itself, Plaintiff attempted to withdraw his motion to intervene, saying that motion was made moot by the judgment against Plaintiff naming Plaintiff a party to the case, and made him a party to the case whether he liked it or not. RICO Defendant Judge Norma Lindsey however disagreed and denied the motion, denying all motions Plaintiff had filed in the Case. When questioned as to her basis, a visibly shocked Judge said what corrupt officials unprepared for the question tend to say: incomprehensible nonsense. When Plaintiff said the Judge's basis were false, the Judge then said that Plaintiff had failed to file affidavits countering RICO Defendant Sergio Mendez motion for summary judgment that had been issued by the criminal court judge behind closed doors. Her reasons were frivolous at best given Plaintiff had filed a number of verified motions with the Court, and given the Judge had just denied Plaintiff's motion to intervene in the case as untimely for coming after final judgment in the case had been issued against him setting a date for foreclosure.

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
### (Violations Of Rico, 18 U.S.C. § 1962(c) || Against All RICO Defendants)

68)      As alleged by ¶ ¶ 16, 37, 48, 132-136, and other related paragraphs, at all relevant times, Plaintiff is and has been a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

69)      As alleged by ¶ ¶ 8, 18-23, 45, and other related paragraphs, at all relevant times, each RICO Defendant is and has been a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

**The RICO Enterprise.**

70)      As alleged by ¶ ¶ 2-12, 26, 29-35, 38-68, and other related paragraphs, the RICO Defendants and their co-conspirators are a group of persons associated together in fact for the

common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint; namely, through a multi-faceted campaign of repeat extensions of credit 'double-secured' by a first lien on property at rates exceeding twenty five percent per annum, as that computed under Reg Z. et al. knowing at all times the credit it was extending, and in fact having attained a reputation of collecting the credit it was extending, by force, threats, fraud, or other criminal acts, including bribery, and under color of law, and through a multi-faceted and repeat extensions of credit at the rates that it further decided it would make the same extensions of credit that it rendered, and all their contracts legally void and unenforceable, knowing it would collect repayment by the aforementioned criminal acts, so it could use the security interests that rendered its contracts for its extension of credit void under the law as security to fraudulently secure financing at non-extortionate at a fraction of what it was charging its debtor under its extortionate loans, through repeat acts of racketeering, including felony corruption under State law, and through repeat acts of extortion, mail and wire fraud, amongst others discovery will show.

71)     As alleged by ¶ ¶ 2-4, 6-10, 33-35, 38-41, 44-54, 56-67, these RICO Defendants and their co-conspirators have organized their operation into a cohesive group with specific and assigned responsibilities and a command structure, operating in South Florida in the United States, they have been funded primarily from the proceeds of their documented racketeering, extortionate credit lending, financing of extortionate credit lending, and collection of extortionate credit loans, amongst other predicate RICO acts, including those listed in the paragraph above. Over the four years they have adapted their scheme to changing circumstances (Sergio Mendez robbed graves under color of law—twice being removed from his role as trustee by two full opinions of the higher court in one two week seating of that higher court for having robbed

parties without the most rudimentary fundamentals of due process; he still gets 'lucky' and wins by running into judges he selects who happen to be board members on charities his enterprise pays well for, but he's no longer robbing graves for god sakes, removing a sister from her brother's deceased estates just because he wanted the estate himself), recruiting new members to their operation (bringing them from the criminal division if needed to issue foreclosure decisions if you—'no problem, f*ck the law'), and expanded the scope and nature of their activities— going from grave robbers to flashy charity dinners with local celebs and all. While the organization of the criminal enterprise has changed over time, and its members may have held different roles at different times, the criminal enterprise has generally been structured to operate as a unit in order to accomplish the goals of their criminal scheme.

72)     As alleged by ¶ ¶ 2, 4, 20, 30, 34, 38-44, 46, 48, 54-59, RICO Defendants CEM Investments LLC has been responsible for making 'investments' it has made out of thin air if anything it ever invested in anything but crime and corruption, never issuing a single dollar out and never receiving a single right to any investment by its family of companies (too busy selling to HUD and to the Cayman if needed to get rid of it all on their next fraud); yet CEM Investments LLC made 'investments' and 'acquired' rights and 'more' without a contract, to show for it all; the RICO Defendant invested in crime no doubt, when for example by its actor Carol Gardner the RICO Defendant used a blast of e-mail and letter communications to extort an additional five thousand dollars it had not the slightest right to receive ever—from any source ever (not that it has rights to receive anything from any other sources, but usually CEM Investments LLC has some false document it lacked here to show its rights that it criminally extorts and nothing more), but yet the RICO Defendant did end receiving from Plaintiff who chose to avoid a Sergio Mendez foreclosure at the time CEM Investments LLC needed a little

boost in its criminal windfall has invested heavily the criminal proceeds it has just stolen without any right to the proceeds at all to acquire and invest the proceeds of its crime in positions of trust and authority , to build relationship with officials, media, and more, so that it could further continue to earn from the corruption it sawed; making bro-salesman mortgage broker head of its Boys and Girls Club of Miami-Dade charity, that the RICO Defendant then used to hire and corrupt the officials it needed to earn money it had no right to under the law, as always, and always more and more; making RICO Defendant Norma Lindsey a director of the board and hosting fancy parties with her local celebs and more. The RICO Defendant has criminalized its asset portfolio by creating fraudulent documents that appeared to resemble real documents like an 'assignment of mortgage' that meant absolutely nothing at all but that resembled real assignments like assignments of promissory notes. The RICO DEFENDANT like the rest of its organization has sold of any rights to any property it ever had—like GM Capital's mortgage— worthless as it was, mortgaged its investments as HUD mortgages to shift the financing the HUD, and itself just operated by pure, good old extortion.

73)     As alleged by ¶ ¶ 3, 8-13, 26, 27, 35, 38, 40, 43-45, 47-62, 64-67, RICO Defendant civil court judge Norma Lindsey has repeatedly enforced, and she has aided and abetted the enforcing of extortionate credit loans, conspired to do the same, and she has financed the making of extortionate credit loans by the proceeds of the assets of the RICO Enterprise she earns and that are automatically reinvested—even without her share being invested at all, for the option of having access to the (more) assets is value in and of itself, even if the assets are never used at all in the Enterprise going forward; the RICO Defendant has committed repeat acts of racketeering, felony corruption, and felony conspiracy to commit corruption and aiding and abetting felony corruption, numerous acts of mail and wire fraud by the mails and wires she

caused in furthering her Enterprise, and repeat acts of extortion, taking in fact plaintiff's property and selling it in foreclosure having no right to do so at all, and taking in fact Plaintiff's homestead exemption after being repeatedly notified of her actions constituting a new taking of property under color of law; oh and she self-assigned herself to the case and joined in conspiring with Sergio Mendez to avoid responding to Plaintiff's response and motion to dismiss that Plaintiff filed in the Court of law to a suit filed against him in a court of law. The Judge has conspired to proceed illegally wearing her day cloth; but the people of Miami paid her for justice, not justice for herself and for her to f**k them all. God knows how many families she's rendered homeless under color of law; suicides and deaths she has caused—a number discovery should show. //

74)     As alleged by ¶ ¶ 3, 11, 12, 26, 30, 38-67, The RICO Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), to wit:

**Pattern of Racketeering Activity: Extortion in Violation of Hobbs Act, 18 U.S.C. § 1951**

75)     As alleged by ¶ ¶ 15, 35, 46, 130-134, At all times material to this Complaint, Plaintiff was engaged in interstate and foreign commerce and in an industry that affects interstate and foreign commerce—specifically the home ownership and the mortgage borrowing and home lending industry, an industry so important to interstate commerce that its largest participant is the U.S. Government itself, directly and indirectly participating in the industry by guaranteeing obligations deemed of the highest importance to interstate commerce by issuing government backed obligations that promote the industry and all commercial activity.

76)      As alleged by ¶ ¶ 2-4, 6-10, 32-35, 37-41, 43-54, 56-67, As described herein, the
RICO Defendants have engineered a wide-ranging campaign against Plaintiff's most basic and
most natural of rights that the RICO Defendants designed, orchestrated and perpetrated to instill
what the RICO Defendants hoped would be a debilitating fear paralyzing the Plaintiff from
further attempts to enforce his rights and from further attempts to thwart the RICO Enterprise
from taking his property illegally under color of law, also making an example of the Plaintiff that
automatically served as a reminder on the RICO Enterprise's other loans, that the borrowers had
to pay the loan; that they must pay THIS loan, as the mortgage broker and family member of the
lenders told Plaintiff on the night the lenders made their illegal loan. The RICO Defendants
denied and robbed Plaintiff of his procedural and substantive due process of law under the 5th,
and 14th, and the RICO Defendants did so openly in open court; openly rejecting Plaintiff's rights
and request for due process of law in open Court; rebuffing any legal maneuvers with a wall of
illegal acts that just ignored Plaintiff's 'jibber jabber' for him home; the RICO Defendants
robbed Plaintiff of his homestead exemption, without any right to doing so at all, and again under
color of law; and they robbed him of his homestead rights as a mere afterthought, seeking to stop
any attempts Plaintiff made to highlight the illegality 'mad judges and lawyers' were doing just
so they could rob his home at any cost. Ultimately the RICO Defendants even got to hold their
foreclosure sale, selling Plaintiff home and his homestead under color of law—with clear
intentions and in open and in knowing violation of the rights Plaintiff made sure they knew
before they acted against them, trampling every single basic right so that they could buy his
property, a property they had no right to sue, let alone sell in public court. The RICO
Defendant's acting under a motto that when the law forbids that which you want, a criminal

judge by Metrorail from criminal court will give it to you for a price you'll wanna pay for its worth getting what you can't under the law.

77)     As alleged by ¶ ¶ 1-11, 38-41, 50-67, the RICO Defendants manufactured false evidence against Plaintiff and are relying on that false evidence in illegal proceedings the intent and effect of causing a reasonable fear of economic loss and of a loss of shelter on the Plaintiff and more. As described herein, the RICO Defendants conspired with repeatedly between themselves and other local officials, going as far to conspire with a criminal court judge to attain an illegal judgment against Plaintiff so they could foreclose and steal Plaintiff's home.

78)     As alleged by ¶ ¶ ¶ 2-4, 6-10, 32-34, 37-40, 43-53, 55-67, the RICO Defendants' actions are intended to induce fear in Plaintiff that the RICO Defendants will, among other things: (1) continue to pursue a scheme of misrepresentation to the great harm and public denigration of Plaintiff, unless and until Plaintiff gives up and surrenders his home the RICO Defendants; (2) continue to conspire with Courts and Court officials to have Plaintiff denied his rights under the law; and (3) secure and execute throughout Plaintiff's lifetime fraudulent multi-million dollar judgment against Plaintiff that will forever destroy Plaintiff's life. These actions, as described herein, have created a reasonable fear of harm on the part of Plaintiff, including fear of economic loss, imprisonment, and death.

79)     As alleged by ¶ ¶¶ 2-4, 6-10, 32-34, 37-40, 43-53, 55-67, Accordingly, the RICO Defendants have unlawfully obstructed, delayed, and affected—and attempted to obstruct, delay, and affect—commerce as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by extortion, as that term is defined in § 1951, in that the RICO Defendants attempted to induce Plaintiff to consent to relinquish property through the wrongful use of the robes and color of law, instilling fear of the law for life with each illegal act

the RICO Defendants took against Plaintiff under color of law, including fear of economic harm, and loss of home and shelter, and more, whose negative effects on interstate commerce will be felt long after the RICO Enterprise achieves its robbery under color of law of the Plaintiff's home.

**Pattern of Racketeering Activity: Multiple Instances of Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341. 1343.**

80)     As alleged by ¶ ¶ 2-4, 6-10, 32-34, 37-40, 43-53, 55-67, As described herein, the RICO Defendants engaged in a wide-ranging scheme or artifice to defraud Plaintiff, using courts of law in the United States as the central part of the RICO Defendants scheme or artifice to defraud Plaintiff, authorities, the Courts and the greater public concerning Plaintiff's purported role and actions. The ultimate objective of the RICO Defendants' scheme or artifice to defraud is to coerce Plaintiff into relinquishing all rights to the RICO Defendants want from him, including his fear, his observance perhaps of their power to break the law, and of course, his own home; with Plaintiff unable to overcome the massive fraud and racketeering of the RICO Defendants in the Court that robbed his homestead, and also his home.

81)     As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, in furtherance of their scheme, and as described herein, the RICO Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following: emails court judgments lis pendens filings and more. RICO Defendants' scheme or artifice to defraud that constitute violations of 18 U.S.C. §§ 1341 and 1443. The RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and/or defraud

Plaintiff relinquishing all rights to the RICO Defendants and their co-conspirators under their illegal state court.

82)     As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, The RICO Defendants' false and misleading statements and their false and misleading recording have been relied on by banks, local state official and, Plaintiff's friends and relatives and business partners, and also by attorneys, the media, and more. Further, the RICO Defendants' false and misleading statements have caused Plaintiff significant damages.

**Pattern of Racketeering Activity: Money Laundering in Violation of 18 U.S.C. $ 1956(a)(2)(A)**

83)     As alleged by ¶ ¶ 3, 8-13, 26, 27, 35, 38, 40, 43-45, 47-62, 64-67, Defendants have knowingly caused the transportation, transmission, and/or transfer of funds to or from various entities and to and from the United States to themselves and to co-Defendants, and other entities with the intent that those funds be used to promote the carrying on of unlawful activity, including but not limited to violations of 18 U.S.C. §§ 1341, 1343 and 1951, such as the secret preparation of the manufactured evidence, illegal payments to attorneys and favors constituting bribery to judges and public notaries and more.

**Pattern of Racketeering Activity: Racketeering in violation of 18 U.S.C. $ 1961(1).**

84)     As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, Defendants have knowingly and repeatedly engaged in a series of unlawful exchanges corruptly giving, offering, or promising public servants RICO Defendant judges Norma Lindsey and Lisa S. Walsh pecuniary interests not authorized by law for the past, present or future performance, nonperformance, or violation of any act or omission within the discretion of the public servant, in violation of a public duty, or in the performance of a public duty.

85)      As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, RICO Defendants Sergio Mendez

and his RICO Co-defendant Mendez and Mendez P.A. appear from public records to have

perfected their legal trade by solely engaging in a series of unlawful exchanges corruptly giving,

offering, or promising public servants pecuniary interests not authorized by law for the past,

present or future performance, nonperformance, or violation of any act or omission within the

discretion of the public servant, in violation of a public duty, or in the performance of a public

duty. That RICO Defendants Sergio Mendez was able to convince a criminal court judge to take

metro rail and come to downtown Miami so as issue him a judgment in foreclosure evidences

both the success RICO Defendants Sergio Mendez and his RICO Co-defendant Mendez and

Mendez P.A. had in practicing their trade, and also their notoriety.

86)      As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, Plaintiff is entitled to, and should be

awarded, a preliminary and permanent injunction that enjoins Defendants, their agents, servants,

employees, and attorneys, and all other persons in active concert or participation with any of the

Defendants, from attempting directly or indirectly to sell Plaintiff's home, and a preliminary and

permanent injunction enjoining Defendants from seeking to enforce any and all judgments

attained against Plaintiff or anyone else in the case, and enjoining Defendants to respond to

Plaintiff's motion to dismiss their case in chief for failure to state a claim or to withdraw their

case with prejudice and file it no more. Wherefore, Plaintiff prays for judgment as set forth

below.

## SECOND CLAIM FOR RELIEF
### (Conspiracy to Violate RICO 18 U.S.C. § 1962(d) || Against All RICO Defendants)

87)      As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, the RICO Defendants have

unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and

with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

88)      As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, and upon information and belief, the RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

89)      As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, and upon information and belief, the RICO Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

90)      As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, Each RICO Defendant knew about and agreed to facilitate the Enterprise's scheme to destroy Plaintiff personal and business life. It was part of the conspiracy that the RICO Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth in paragraphs alleged herein, supra. As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in its business and property, including damage to Plaintiff's reputation and goodwill; damage to Plaintiff's life and business including grave psychological damage; Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

91)     As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, Plaintiff is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of the Defendants, from attempting directly or indirectly to sell Plaintiff's home, and a preliminary and permanent injunction enjoining Defendants from seeking to enforce any and all judgments attained against Plaintiff or anyone else in the case, and enjoining Defendants to respond to Plaintiff's motion to dismiss their case in chief for failure to state a claim or to withdraw their case with prejudice and file it no more.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(Conspiracy against Civil Rights, Violation of 42 U.S.C. § 1985 || Against All Defendants,**
**except Alicia Consuegra, Lexis II Ltd, Lizbeth Buchbinder)**

92)     As alleged by ¶ ¶ 2-10, 32-40, 43-67, Defendants conspired to deter Plaintiffs by threats, intimidation, and economic coercion, and under guise of their day robe from seeking to assert his federal constitutional rights. Defendants conspired for the purpose of depriving Plaintiff, either directly or indirectly, of the equal protection of the laws or of the equal privileges and immunities of the laws, and to deprive Plaintiff from giving his support and advocacy to protect his legitimate claims of the right to property under the Fifth and 14th Amendment of the United States Constitution.

93)     As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, In addition to, but not limited to, the conduct of Defendants set forth above: (a) Defendants persisted in attempting to liquidating long after receiving repeat notice that the property was Plaintiff's homestead in complete disregard of Plaintiff's rights under the law. (b) Defendants refused to provide notice and opportunity to be heard in the proceedings. (c) Defendants used methods of economic coercion, intimidation,

threats, under a disguise of apparent law, and interference in the private affairs of Plaintiffs in order to advance their methods of taking his property and home. (d) Defendants devised and implemented de facto proceedings against Plaintiff's home without notice or hearing, in fact denying and rejecting both notice and hearing even when Plaintiff insisted, showed up, and filed a motion to dismiss Defendants couldn't even conjure a response to—and never responded to.

94)      As alleged by ¶¶ 2-10, 32-34, 37-40, 43-67, As a direct and proximate result of Defendants conduct, Plaintiff has suffered and will continue to suffer damages including economic and compensatory, in an amount according to proof. (c) Such Defendants' acts were reckless or with a callous indifference to the federally protected rights of the Plaintiffs. Also, Defendants' acts were malicious and were willful and oppressive and justify an award of punitive damages according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### FOURTH CLAIM FOR RELIEF
**(Civil Action for Deprivation of Rights,
Violation of 42 U.S.C. § 1983 || Against All Defendants, except Alicia Consuegra, Lexis II Ltd, Lizbeth Buchbinder)**

95)      As alleged by ¶¶ 2-10, 32-40, 43-67, this is an action for deprivation of rights guaranteed by the Constitutional under color of state law under recodification section 1979 of the Civil Rights Act of 1971, 42 U.S.C.A. § 1983, for remedies due to Plaintiff for the RICO Defendants' deprivation of Plaintiff's civil rights under color of law.

96)      As alleged by ¶¶ 2-10, 32-40, 43-67, The RICO Defendants and the non-RICO Defendants, with the exception of CEM Investments LLC are attorneys, public notaries, or judges, including a criminal court judge, and at all times have been officers of their respective courts. Attorneys and notaries are usually exempt from being state actors when acting in scope of their duties. Neither are not exempt from being state actors, however, when the attorneys use

their position as officers of the Court to enter counterfeit and verify notes, assignments, and recordings, enter illegal appearances in courts without authority, and receive judgments from the wrong courts, against defendants they did not request judgments against, but added for a corrupt judge to sign on corruptly. And attorneys are not exempt from being state actors when they corrupt court officials, file false evidence and forged documents, ignore answers and responses they can not address, and in general do everything under the sun and commit every violation imaginable to deprive a party of their home without the most rudimentary fundamentals of due process. The RICO Defendant attorneys have acted in this Case and alleged herein in all the ways that make them state actors as acting under color of law. In doing all of the things mentioned, the Defendants, and each of them, were acting under color of their authority and, as such, under color of the statutes, ordinances, regulations, customs, and usages of the respective Courts.

97)     As alleged by ¶ ¶ 2-10, 32-40, 43-67, And then there's the two judge defendants who usurped their positions as judges—one hopping on the metro rail from the unrelated criminal division to rob Plaintiff's home under color of law; both of them making themselves Queens, self-selecting their subjects and robbing them blind under color of law and in complete and utter disregard of the law—taking directions from an office manager and denying a party's motion to intervene 'as being too late', after having issued a judgment against the same party and robbed him of his home behind closed doors—and all for what: a shinier pair or Prada shoes to show off at the next gala she attended with CEM Investments LLC, while Plaintiff went without sleep day and night for as long as two weeks at a time to stop her and her cohorts: the miserable wretches who appear to have decided being a judge was everything they wanted to be and nothing they wanted to do.

98)     As alleged by ¶ ¶ 2-10, 32-40, 43-67, By reason of the Defendants' conduct, Plaintiff was deprived of rights, privileges, and immunities secured to Plaintiff by the Constitution of the United States and laws enacted under that Constitution. Plaintiff has been deprived of liberty and property interests without the minimal protections of due process guaranteed to Plaintiff under the United States Constitution. The conduct of the Defendants, and each of them, was arbitrary and capricious, without notice or warning, taken in secret, and intended to deprive Plaintiff of rights and has, for now, destroyed Plaintiff's career and trade.

99)     As alleged by ¶ ¶ 2-10, 32-40, 43-67, As a proximate result of Defendants' actions against Plaintiff, as alleged above, Plaintiff has been harmed, in that Plaintiff has lost his trade, harmed his health, destroyed his reputation, and even threatened his freedom.

100)    As alleged by ¶ ¶ 2-10, 32-40, 43-67, all injury to Plaintiff has included emotional and mental distress, physical upset, and physical injury, all constituting general damages in an amount to be determined at trial. As a further proximate result of the actions of the Defendant attorneys, and Defendant attorneys' arbitrary, capricious, and intentional deprivation of Plaintiff's liberty, Plaintiff has suffered damage to Plaintiff's good name, reputation, honor, and integrity.

101)    As alleged by ¶ ¶ 2-10, 32-40, 43-67, the above actions of the Defendants, and each of them, in depriving Plaintiff of his constitutionally protected rights were done with evil motive or intent, or with reckless or callous indifference to Plaintiff's rights.

102)    As alleged by ¶ ¶ 2-10, 32-40, 43-67, Plaintiff is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of the Defendants, from attempting directly or indirectly to sell Plaintiff's home, and a preliminary and permanent injunction enjoining Defendants from seeking to enforce any and all judgments

attained against Plaintiff or anyone else in the case, and enjoining Defendants to respond to Plaintiff's motion to dismiss their case in chief for failure to state a claim or to withdraw their case with prejudice and file it no more.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
### (Quiet Title | Against Defendants)

103)    Plaintiffs seek an order quieting title to Plaintiff's home.

104)    As alleged by ¶ 37, The real properties are described as:

CONDOMINIUM UNIT NO. 5303, OF MARQUIS, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM RECORDED IN OR BOOK 26920, PAGE 3495, AND ALL EXHIBITS AND AMENDMENTS THEREOF, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

105)    As alleged by ¶ ¶ 1-11, 37-67, there never existed constitutional authority or jurisdiction to divest Plaintiff of the property, to change or to attempt to change lawful title to the property, or to divest Plaintiff of the property without proper notice and opportunity to be heard.

106)    Plaintiffs request that this court determine that title to the properties resides with Plaintiff and against any and all adverse claims whomever they may be that exist or arise directly or indirectly as a result of the actions the RICO Defendants have taken here.

107)    Plaintiffs request that this court require Defendants to pay all attorney's fees and costs and expenses associated with this complaint to quiet title to property.

## SIXTH CAUSE OF ACTION
### (Abuse of Process | Against all Defendants except Alicia Consuegra, Lexis II Ltd, Lizbeth Buchbinder)

108)    Plaintiffs refer to and incorporates, 2-4, 6-10, 32-34, 37-40, 43-53, 55-67.

109)    As alleged by ¶¶ 2, 4, 37-67, Defendants entertained an ulterior motive in using various processes and engaging in noncommunicative conduct in a manner, which was wrongful and not authorized by law.

110)    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer damages, including economic and compensatory in an amount according to proof.

111)    As alleged by ¶¶ 37-67, Defendants' acts were willful and oppressive and justify an award of punitive damages according to proof.

### SEVENTH CAUSE OF ACTION
### Fraud | Against all Defendants

112)    As alleged by ¶¶ 6-11, 37-67, Defendants and their agents have knowingly misrepresented, omitted, and/or concealed material facts in their pleadings and representations before courts, in their communications to with Plaintiff and third parties. Each and every Defendant has personally engaged in this conduct, or knew or should have known that other Defendants were engaged in it on his or her behalf. These false representations are detailed throughout this Complaint and include the falsified mortgage, falsified notarizing of documents and assignments registered illegally against Plaintiff's property.

113)    As alleged by ¶¶ 6-11, 37-67, Defendants made these false representations while knowing that their misrepresentations were materially false and/or that their omissions were material.

114)    As alleged by ¶¶ 6-11, 37-67, these material misrepresentations and/or omissions have been reasonably and justifiably relied upon by Plaintiff, the state and federal courts, and state and federal government agencies and officials to the result of the loss of Plaintiff's home without any legal right at all.

115)    As alleged by ¶ ¶ 37-67, as a direct, proximate, and foreseeable result of Defendants' fraud, Plaintiff has been harmed, including incredible pecuniary, reputational, and other damages. These injuries include significant damage to Plaintiff's reputation and goodwill, and the attorneys' fees and equivalent pro se costs Plaintiff has incurred to defend himself and the law in objectively baseless and wholly illegal litigations. Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Plaintiff is entitled to, and should be awarded, punitive damages against each of the Defendants.

## EIGHTH CLAIM FOR RELIEF
### (Trespass to Chattels || Against All Defendants)

116)    Plaintiff realleges and incorporates herein by reference ¶ ¶ 2-10, 32-34, 37-40, 43-67 of this Complaint as if set forth in full.

117)    As set forth above, the RICO Defendants have engaged in a pattern of extortion, collusion, wrongdoing, corruption, and deceit with an intent to interfere with Plaintiff's property, Through these actions, and by prosecuting their illegal suit, manufacturing false evidence, tampering with testimony, tampering with Judges, tampering with Court officials including the Court transcribers, disseminating misleading statements to the public, to the courts and to U.S. government officials, and otherwise engaging in the campaign described in the foregoing paragraphs of this Complaint, Defendants have intentionally, and without justification or consent, interfered and intermeddled with Plaintiff's use and enjoyment of his property, his reputation and any resulting goodwill.

118)    As alleged by ¶ ¶ 37-67, the harms suffered by Plaintiff is the direct, proximate, and reasonably foreseeable results of the Defendants' acts of intentional interference with Plaintiff's homestead.

119)    As alleged by ¶ ¶ 37-67, Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Plaintiff is entitled to, and should be awarded, punitive damages against each of the Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## NINTH CLAIM FOR RELIEF
**(Civil Conspiracy || Against All Defendants except Alicia Consuegra, Lexis II Ltd, Lizbeth Buchbinder)**

120)    As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67 above, Defendants have committed torts against Plaintiff, including acts of racketeering giving rise to violations of RICO, fraud, tortious interference with contract, trespass to chattels, and unjust enrichment.

121)    As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, Defendants agreed to participate in a common scheme against Plaintiff. Defendants intentionally participated in the furtherance of a plan or purpose to obtain property of Plaintiff's. In furtherance of this plan or purpose, Defendants committed overt and unlawful acts, including acts of racketeering as alleged herein.

122)    As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, As a direct and proximate result of Defendants' conspiracy, the overt acts committed in furtherance of that conspiracy, and the torts committed against Plaintiff, Plaintiff has been damaged in his person, business and property, and further damage to Plaintiff's person, business and property is threatened and imminent.

123)    As alleged by ¶ ¶ 2-10, 32-34, 37-40, 43-67, Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, Plaintiff is entitled to, and should be awarded, punitive damages against each of the Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## TENTH CLAIM FOR RELIEF
### (Declaration of Homestead || Against all Defendants)

124)   As alleged by ¶¶ 48-50, perhaps no other person has been found to be a resident of Miami, Florida as often and by as many courts as I have, yet still has not attained a homestead stamp with the property tax records.

125)   As alleged by ¶¶ 48-50, On my first official application for homestead exemption RICO conspirator  Gabriel Bodner refused to give the tax recorded a copy of the land trust holding the property at the time (wrongfully), by his failure to update the records after GM Capital Management ceased to exist June 2014. Gabriel Bodner, best friend with CEM Investments LLC and the rest of the RICO Defendants refused to even serve me—his original client, claiming I was a rapist or a disbarred attorney, or some other complete falsity that he cited in his conspiracy with CEM Investments et al.

126)   As alleged by ¶¶ 48-50, 54-55, Although an official homestead hearing determining my homestead to be, well, my homestead was to be held long ago (which would have given me the designation of homestead on the property tax records too—not just with the court), and long long ago I provided them with the documents Mr. Bodner had denied them and long, long ago I provided them with clear title in my name that would allow them to determine my interest—which they claimed was their reason for denying my original petition.

127)   As alleged by ¶¶ 3, 48-50, 54-55, Perhaps they are waiting for today, or next week, after the property is sold in an auction by the RICO grave-diggers above before they provide me with the stamp of homestead Judge Analisa Torres gave me long ago, and for what it's worth, rightfully so.

128)    As alleged by ¶¶ 9-11, 37-67 and as Exhibit 5 shows, THERE IS NO WAY AT ALL—ABSOLUTELY NONE THAT THE AUCTON IN FORECLOSURE CAN LEGALLY PROCEED AS SCHEDULED GIVEN MY CLEAR NOTICE OF HOMESTEAD IN EXHIBHIT 5 TO ALL RICO-DEFENDNATS IN THE CASE. But it will (AND IT DID), because these RICO Defendants are criminals, respecting neither law or order, nor the good sense and order of society--NONE.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## DEMAND FOR JURY TRIAL

129)    Plaintiff demands a jury trial of all issues so triable.

**WHEREFORE,** Plaintiffs request judgment for:

1. Actual, general, compensatory, and consequential damages in an amount to be proven at trial;

2. Punitive damages in a sum sufficient to punish and set an example of Defendants;

3. Restitution of all money, property, profits and other benefits and any thing of value that Defendants received preceding or pending this lawsuit;

4. Declaratory and injunctive relief including quiet title to Plaintiff's home and a declaratory judgment of homestead.

5. Equitable relief;

6. Interest at the rate of seven (7)% per annum;

7. Reasonable attorney's fees and costs; and

8. Such other and further relief as this court deems just and proper.

Dated this 23rd of October 2015


GERTI MUHO, PRO SE
1000 Biscayne Blvd. 5303
Miami, FL 33132
(305) 204-0000
(212) 300-3826
gm@gmcapital.net


STATE OF FLORIDA, COUNTY OF MIAMI-DADE.


Sworn to and subscribed before me this 26th day of October, 2015

John Tsialas
Notary Public

# EXHIBIT 1

**Photo 1 of the signature of RICO Defendant Alicia Consuegra from documents RICO Defendant Alicia Consuegra notarized for GM Capital Management Inc.**

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this 26th day of November, 2014, by G Peter Morgan, as President of GM CAPITAL MANAGEMENT, INC., a Delaware corporation, as trustee of BLUE 5303 LAND TRUST dated September 13, 2013, who [ ] is personally known or [ ] has produced a ~~Florida Drivers License~~ as identification.

Dem ID Card

Notary Public

Print Name

**Photo 2 of the signature of RICO Defendant Alicia Consuegra from documents RICO Defendant Alicia Consuegra notarized for GM Capital Management Inc.**

Signed, sealed and delivered in the presence of: GM CAPITAL MANAGEMENT, INC.,
a Delaware corporation, as Trustee of
BLUE 5303 LAND TRUST dated September
13, 2013

Print Witness Name Alicia Chsvgra

G Peter Morgan, as President

Print Witness Name Roman Kravchenko

Photo 3 of the signature of RICO Defendant Alicia Consuegra falsely signing as Jorge De La Ona as president of Capital International Finance Inc.

In Witness Whereof, Assignor has executed this instrument on November 26, 2014

Signed, sealed and delivered in the presence of

Witness Name   Michele Rios

Witness Name   Lizbeth Buchbinder

Capital International Financial, Inc.
a Florida corporation

By

Jorge de Ona as President

Photo 4 of the signature of Jorge De La Ona taken from filing filed with the Florida Secretary of State for Capital International Finance, Inc., of Jorge De La Ona signing as president of Capital International Finance Inc.

at I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name in Block 12 or Block 13 if changed, or on an attachment with an address.

TURE:                    DE ONA    JORGE        6-14-95 - 305-442-1251
       SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR        Date        Daytime Phone #

Photo 5 of the signature of Jorge De La Ona taken from filing filed with the Florida Secretary of State for Capital International Finance, Inc., of Jorge De La Ona signing as president of Capital International Finance Inc.

at I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name in Block 12 or Block 13 if changed, or on an attachment with an address.

TURE:                    DE ONA    JORGE        6-14-95 - 305-442-1251
       SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR        Date        Daytime Phone #

# EXHIBIT 2

## AGREEMENT OF ASSIGNMENT OF PROMISSORY NOTE

This PROMISSORY NOTE ASSIGNMENT (the "**Assignment**") is entered into as of Dec. 1, 2014, by and between Capital International Financial, Inc., a corporation organized under the laws of Florida ("**Assignor**"), and Lexis II Ltd., a company organized under the laws of the Cayman Islands ("**Assignee**").

**WHEREAS**, Assignor has agreed to assign to Assignee and Assignee has agreed to receive from Assignor, a Promissory Note ("**Promissory Note**") issued by GM Capital Management, Inc., a Delaware corporation ("**Issuer**"), for the current amount owed by Issuer to Assignor inclusive of all interest ("**Assigned Value**").

**NOW THEREFORE**, in consideration of the premises herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed that:

As of the date first written above, Assignor hereby assigns to Assignee the Promissory Note and all associated rights and obligations contemplated by the Promissory Note and solely, insofar as they relate to the Promissory Note, Assignee, as the holder of the Promissory Note, shall comply with the terms of the Promissory Note to the same extent that Assignor was bound thereunder as the holder of the original Promissory Note.

Nothing contained in this Assignment supersedes any of the obligations, agreements, covenants or warranties of Issuer under the Promissory Note (all of which survive the execution and delivery of this Assignment as provided and subject to the limitations if any set forth in the Promissory Note). If any conflict exists between the terms of this Assignment and the Promissory Note, then the terms of the Promissory Note shall govern and control.

Assignor hereby represents Assignor has full power and authority to execute and deliver this Assignment duly and validly executed to Assignee herein.

This Assignment shall be governed and construed in accordance with the laws of the State of New York without regard to conflict of laws principles.

**THE PARTIES HERETO** have caused this Assignment in their names as of the date first written above.

Signed, sealed and delivered in
the presence of:

**Capital International Financial, Inc.**

_____
David Strauss

_____
By: Jorge de Ona, its President

_____
Robert Lowe Jr.

1

# EXHIBIT 3

**From: Elaine Renoire <elaine@abusiveguardianships.com>**
**To: gm@gmcapital.net**
**Subject: FW: wanted: sergio mendez (FL) attorney**
**Date: October 8, 2015 at 9:53 PM**

Hi Gerti!


Thanks for the info. We appreciate it.


I hope you get justice.   I do have to warn you that in guardianship, most of the participants are insulated, even protected by immunity, unless they steal directly by conversion. And that's one of the reasons we have to much work to do!


Please consider joining us.


Best to you ---


Yours,

Elaine Renoire

NASGA

www.StopGuardianAbuse.org

http://NASGA-StopGuardianAbuse.blogspot.com


This message is CONFIDENTIAL.  If you are not the intended recipient, please delete this email in its entirety and any other threads you have received in error. If you are the intended recipient, you DO NOT have permission to copy or forward this email to any other person(s) without asking permission first.



-------- Original message --------
From: Gerti Muho {GM} <gm@gmcapital.net>
Date: 10/7/2015 9:42 AM (GMT-05:00)
To: Wanted@StopGuardianAbuse.org
Subject: wanted: sergio mendez (FL) attorney

See attached. happy to provide more info on the matter etc. also looking
for more info on this outright criminal of a man as i am considering a
civ-crim action against him and his cohorts.

thanks.
Gerti
- This communication, and any attachment(s), is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential and/or protected by privilege. This communication is for information purposes and should not be regarded as an offer, a contract, or any form of official statement of Gerti Muho Capital Management and/or GM Capital Management, Inc., or of affiliated entities. If you are not the intended recipient, any use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please delete the original email, any copies, attachments thereto, or printouts and notify the sender immediately. GM Capital Management Inc. is a U.S. Securities & Exchange Commission Registered Investment Advisor.

EXHIBIT 4

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA


CEM INVESTMENTS, LLC

        Plaintiff,

  vs.

                      CIRCUIT CIVIL DIVISION

                      CASE NO. 2015-011944-CA-01

GM CAPITAL MANAGEMENT, INC.
ET AL.

        Defendants,
_____/


## DEFENDANT GERTI MUHO'S VERIFIED MOTION TO DISMISS THIS CASE WITH PREJUDICE FOR FAILURE TO STATE A CLAIM FOR RELIEF

# TABLE OF CONTENTS

Page

I.  THIS CASE IS ON A PER SE ILLEGAL AGREEMENT TO BREAK THE LAW
    AND IT MUST BE DISMISSED WITH PREJUDICE AS UNENFORCEABLE
    IN THIS COURT OF LAW; COURTS CANNOT FORCE A PARTY TO BREAK
    THE LAW, AND COURTS CANNOT ENFORCE AGREEMENTS TO FORCING
    A PARTY TO BREAK THE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  THERE IS NO CONTRACT BETWEEN TWO PARTIES AGREEING TO DO
     THE OPPOSITE THING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. PLAINTIFF HAS NOT SATISFIED ALL CONDITIONS PRECEDENT PRIOR
     TO THE FILING OF THIS ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

i

# TABLE OF AUTHORITIES

## STATUTES

**Statute**                                                     **Page**

Fla. Stat. § 494.0078-494.00797 ("FFLA"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12 U.S.C. 2601 et seq. ("RESPA"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

15 U.S.C. 1601 et seq. ("Reg. Z"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15 U.S.C. § 1602 (11) (19). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15 U.S.C.A. § 1638. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 1639(k)(1)(A), (C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15 U.S.C.A. foll. § 1700. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## REGULATIONS

**Regulation**                                                  **Page**

12 CFR 226.3(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12 CFR 226.3(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

24 C.F.R. § 3500.5 (b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

## RULES OF PROCEDURE

**Rule**                                                        **Page**

Florida Rule of Civil Procedure Rule 1.130. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## CASES

**Case**                                                        **Page**

*Adiel v. Chase Federal Sav. and Loan Ass'n,*
C.A.11 (Fla.) 1987, 810 F.2d 1051. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Emergency Assocs. of Tampa, P.A. v. Sassano,*
664 So.2d 1000 (Fla. 2d DCA 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Giovo v. McDonald,*
791 So.2d 38 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Katz v. Woltin,*
765 So.2d 279 (Fla. 4th DCA 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lassiter & Co. v. Taylor,*
99 Fla. 819, 128 So. 14, 69 A.L.R. 689. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lickert v. Pike,*
736 So.2d 724 (Fla. 2d DCA 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Local No. 234 of United Ass'n of Journeymen and Apprentices,*
66 So.2d 818 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Los Angeles County v. Wright,*
107 Cal.App.2d 235, 236 P.2d 892 (1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mintzberg v. Golestaneh,*
390 So.2d 759 (Fla. 3d DCA 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*One Harbor Financial Ltd. Co. v. Hynes Properties, LLC,*
884 So.2d 1039 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6

*Percy A. Brown & Co. v. Raub,*
357 Pa. 271, 54 A.2d 35 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ribich v. Evergreen Sales & Serv., Inc.,*
784 So.2d 1201(Fla. 2d DCA 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Robbie v. City Of Miami,*
469 So.2d at 1385. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Salcedo v. Asociacion Cubana, Inc.,*
368 So. 2d 1337, 1338 (Fla. 3d DCA 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Solis v. Fidelity Consumer Discount Co.,*
E.D.Pa.1986, 58 B.R. 983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sorocka v. Severe,*
858 So.2d 388, 389 (Fla.App. 3 Dist.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*U.S. v. Sea Gate, Inc.,*
397 F.Supp. 1351 (D.C.N.C.1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## OTHER AUTHORITIES

**Citation**                                                                    **Page**

12 Am.Jur., Contracts, secs. 160, 209. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     THIS CASE IS ON A PER SE ILLEGAL AGREEMENT TO BREAK THE LAW AND IT
       MUST BE DISMISSED WITH PREJUDICE AS UNENFORCEABLE IN THIS COURT
       OF LAW; COURTS CANNOT FORCE A PARTY TO BREAK THE LAW, AND
       COURTS CANNOT ENFORCE AGREEMENTS FORCING A PARTY TO BREAK
       THE LAW.

       Plaintiff has filed this action seeking to foreclosure of a residential property under a
mortgage note Plaintiff claims it received to secure performance of a promissory note Plaintiff
alleges is in default, entitling it, Plaintiff claims, to bring this action under the mortgage note to
force a judicial sale of the property in satisfaction of the terms of the promissory note. But this
Court cannot give Plaintiff the judicial sale Plaintiff wants for this Court's jurisdiction is limited
to enforcing legal contracts enforceable by law, and does not extend to enforcing agreements
void ab initio for breaking the law. "[W]here a contract is illegal, no action may be brought on it,
whether in law or in equity. *Katz v. Woltin*, 765 So.2d 279 (Fla. 4th DCA 2000). And, where
forced, this Court grants judicial sales of properties satisfying promissory notes that adhere to the
rule of law, and not those requiring a party to break the law. "The right to contract is subject to
the limitation that the agreement must be legal." *One Harbor Financial Ltd. Co. v. Hynes
Properties, LLC*, 884 So.2d 1039 (2004)

       It is not complicated to determine strictly from the complaint and the promissory and
mortgage notes Plaintiff included with it to start this Case that the contract Plaintiff seeks to
enforce is per se illegal, violating both statute and law and going against the good order of
society this Court is tasked to enforce, not undermine it as Plaintiff wants from this Court of law.
"Parties are free to contract for any terms not prohibited by law." *Emergency Assocs. of Tampa,
P.A. v. Sassano*, 664 So.2d 1000 (Fla. 2d DCA 1995). On its face the single page promissory
note brazenly commits four separate and distinct counts of unambiguous violations that break
federal and State statute and law, with each count sufficiently illegal without the slightest of
ambiguity to resolve to render the contract void and unenforceable by this Court of law. A

promissory note that disregards and "violat[es] valid statute[s] [and] statutory provision[s]" renders a contract "illegal and void." *Local No. 234 of United Ass'n of Journeymen and Apprentices*, 66 So.2d 818 (1953) (citing *Lassiter & Co. v. Taylor*, 99 Fla. 819, 128 So. 14, 69 A.L.R. 689).

The four separate and distinct counts in the promissory note that violate and break federal and State statute and law are:

1.    the promissory charges interest in excess of the eighteen percent maximum interest rate allowed by federal and State statute and law;

2.    the promissory conceals the maximum interest rate it charges in violation of federal and State statute and law requiring it explicitly state the maximum interest rate it charges;

3.    the promissory notes charges late fees exceeding the four percent maximum rate federal and state statute and law allow it charge;

4.    the promissory notes charges late fees twenty days before federal and state law allow it charge such fees.

Plaintiff's "contract or agreement, [is] express[ly] tainted with the vice of illegality [giving Plaintiff no] right[s] upon the contract or agreement [that] can be enforced [in this] [C]ourt of justice." *One Harbor Financial Ltd. Co. v. Hynes Properties, LLC*, 884 So.2d 1039 (2004) (citing 12 Am.Jur., Contracts, secs. 160, 209).

The four illegal counts of the promissory note that this action for judicial sale of residential property seeks to enforce, aside of other applicable violations of federal and State statute and common law, violate unambiguously direct provisions of Regulation Z of the Federal Reserve System, implementing the federal Truth in Lending Act, title I of the Consumer Credit Protection Act, as amended *15 U.S.C. 1601 et seq.* ("**Reg. Z**"), the Real Estate Settlement Procedures Act 12 U.S.C. 2601 et seq. ("**RESPA**"), and Florida's Fair Lending Act, Fla. Stat. § 494.0078-494.00797 ("**FFLA**") (See e.g. REG. Z 15 U.S.C. § 1639(k)(1)(A), (C) stating that "[n]o creditor may impose a late payment [prior to 30-day[s] passing from date payment due] in

an amount in excess of 4 percent of the amount of the payment past due" whereas the illegal promissory note requires "Maker shall pay a later charge to the Note Holder [that] will be five percent (5%) of the overdue payment "[i]f the Note holder has not received the full amount of any monthly payments by the end of ten (10) days after the date is due." *15 U.S.C. § 1639(k)(1)(A), (C), Plaintiff's Promissory Note Exhibit B.*

REG. Z, RESPA, and FFLA apply to all consumer credit transactions, A consumer credit transaction is a credit transaction creating a security interest secured by an individual's principal residence or single condominium unit. *15 U.S.C. § 1602 (11) (19).* REG. Z, RESPA, and FFLA do not apply to business credit transactions. *24 C.F.R. § 3500.5 (b)(2)* (exempting from RESPA business purpose loans exten[ding] credit primarily for a business, commercial, or agricultural purpose, as defined by Regulation Z, *12 CFR 226.3(a)(1)).* But the credit transaction giving rise to the security interest Plaintiff wants this Court to enforce was not a business transaction exempt from REG. Z, RESPA, and FFLA. The credit transaction created a security interest secured by an individual's dwelling, making the transaction a consumer credit transaction as defined in REG. Z, FFLA, and RESPA. And REG. Z explicitly makes "[c]redit ... to a land trust [as in this transaction] is considered to be credit extended to a natural person rather than credit extended to an organization [making] these transactions subject to the regulation since in substance (if not form) consumer credit is being extended." "Truth in Lending Act applies to transaction in which creditor makes loan to commercial entity with knowledge that loan will be assumed by noncommercial entity with no changes in terms of loan. *Adiel v. Chase Federal Sav. and Loan Ass'n,* C.A.11 (Fla.) 1987, 810 F.2d 1051 (citing Truth in Lending Act, § 102, as amended, 15 U.S.C.A. § 1601 et seq.).

The mortgage note creating the security interest Plaintiff wants this Court to enforce makes it clear, moreover, that it was not issued in a business credit transactions as defined under REG. Z, but in a consumer credit transaction <u>not exempt</u> from applicable REG. Z, RESPA, and FFLA. *24 C.F.R. § 3500.5 (b)(2)* (See eg. *Paragraph No. 3 of the Mortgage Note Plaintiff's*

*Exhibit A* stating "an annual accounting of the Funds as required by RESPA" "Lender shall notify Borrower as required by RESPA" "Borrower shall pay ... in accordance with RESPA" "notify Borrower as required by RESPA," and "Borrower shall pay ... in accordance with RESPA"). Mortgage Note Paragraph No. 3; with the mortgage note in Paragraph 6 further requiring that "[b]orrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days ... and shall continue to occupy the Property as Borrower's principal residence for at least [year]," and making the transaction voidable if "[b]orrower [has] g[iven] materially false, misleading, or inaccurate information or statements ... include[ing] representations concerning Borrower's occupancy of the Property as Borrower's principal residence. Plaintiff's Mortgage Note at PP 6, 8 (emphasis added). Needless to say principal residence by definition means the principal residence of a natural person, or a consumer, in the consumer credit transaction at hand. And the property subject to the mortgage note here is residential property that only an individual consumer could make his or her residence; a business could not.[1] "Loan transaction between creditor and borrower, pursuant to which creditor asserted security interest in debtor's residence [i]s [a] consumer loan. *Solis v. Fidelity Consumer Discount Co.*, E.D.Pa.1986, 58 B.R. 983 (citing Truth in Lending Regulations, Regulation Z, § 226.8(c), 15 U.S.C.A. foll. § 1700; Truth in Lending Act, § 128, as amended, 15 U.S.C.A. § 1638).

     Plaintiff admits this transaction was a consumer credit transaction in the mortgage note Plaintiff includes with its complaint in this Case. *(Florida Rule of Civil Procedure Rule 1.130* makes "[a]n exhibit attached to a pleading ... a part thereof for all purposes.") And under the "universal rule," accepted in Florida and "in every other jurisdiction," a party is "estopped" to assert inconsistent positions in litigation. *Salcedo v. Asociacion Cubana, Inc.*, 368 So. 2d 1337,

---

[1] A business could not occupy as its principal residence a condominium reserved for residential use; such use would be commercial in nature and violative of zoning laws and restrictions and violative of condominium and association restrictions restricting use to residential only use.

1338 (Fla. 3d DCA 1979).[2] Because Plaintiff cannot dispute this transaction was not a consumer credit transaction even if it wanted to, and because the violations in the face of the promissory note of federal and State statute and law are clear and indisputable by anyone in good faith, Plaintiff's suit arises from contract that is "[il]legal and [un]enforceable by this Court in equity or in law," *One Harbor Financial Ltd. Co. v. Hynes Properties, LLC*, 884 So.2d 1039 (2004), and Plaintiff's complaint must be dismissed with prejudice by this Court of law in this Case.

II.   THERE IS NO CONTRACT EXISTING BETWEEN TWO PARTIES AGREEING TO DO THE OPPOSITE THING OF ONE-ANOTHER.

If the Court does not find the contract the Plaintiff seeks to enforce by this action was an illegal contract, then the Court must find that no contract at all exists, for the incongruence of the consumer terms in the mortgage note is incompatible with the extortionate duress-driven terms in the non-compliant promissory note the mortgage secured. Agreements conveying interests in real

---

[2] A business transaction exempt from REG. Z, RESPA, and FFLA secured by:

1.   a mortgage note claiming it is not issued for a business credit transactions exempt from RESPA, REG. Z. and FFLA,

2.   a mortgage note claiming it is issued in a consumer credit transaction secured by the issuer's primary residence and home, and

3.   a mortgage note claiming it is issued in compliance with consumer credit transactions requiring protections against foreclosure of the consumer's home and protections against unexpected lawsuits for foreclosure of the consumer's home, among other consumer credit protections the mortgage note claims it adheres to and observes,

would still render the promissory note and the contract Plaintiff wants to enforce *illegal and void* and unenforceable by this Court of law, for the mortgage note was granted to secure a consumer credit transaction and was obtained either without legal authority and "illegal because the [business] did not have the authority to make [the consumer credit transaction references]" it made, Abramson v. Florida Psychological Ass'n, 610 So.2d 447 (1992), as a product exploitive of distress, fraud, or some combination thereof. FL ST § 817.545 (a person commits mortgage fraud if, intending to defraud, knowingly makes or uses a material misstatement, misrepresentation, or omission with the intention that the misstatement, misrepresentation, or omission will be relied on by [a] borrower, or any other person or entity involved, and also one, intending to defraud, [f]iles or causes to be filed with the clerk of the circuit court for any county a document involved in the mortgage lending process which contains a material misstatement, misrepresentation, or omission).

If the much, much more valuable mortgage note in this Case coincides to have been used by the lender to secure liquidity from a financial institution at, say, one or two percent, considering mortgage notes granting interests in personal dwellings are viewed as safe instruments unlikely to default, then the material misstatements, misrepresentations, or omissions now constituting mortgage fraud in light of the incongruent and outright contradictory terms of the two notes, would constitute federal bank fraud if as described above the much, much more valuable mortgage note secured for the lender cheap liquidity by, say, mis-pricing the mortgage note as not one charging distress driven rates even unsecured credit cards can't charge on default.

property are subject to the same rules of construction as other contracts and should be interpreted using contract principles. *One Harbor Financial Ltd. Co. v. Hynes Properties, LLC*, 884 So.2d 1039 (2004) (citing *Los Angeles County v. Wright*, 107 Cal.App.2d 235, 236 P.2d 892 (1951); *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 54 A.2d 35 (1947); *U.S. v. Sea Gate, Inc.*, 397 F.Supp. 1351 (D.C.N.C.1975)). A Court faced with conflating terms in the agreement must determine "whether an agreement on differing, contradictory terms is even possible where no agreement exists between the parties at all." *Sorocka v. Severe*, (Fla.App. 3 Dist.) 858 So.2d 388, 389 "Acceptance of personal injury claims but denial of property damage claims was not settlement agreement." "[A] party seeking judgment based on a [contract] has the burden to prove assent by the opposing party and must establish that there was a meeting of the minds or mutual or reciprocal assent to certain definite propositions. Robbie, 469 So.2d at 1385; Ribich, 784 So.2d 1201. In this Case the incongruent terms make evident no meeting of the minds existed between the purpose of the mortgage and the promissory note securing it. "[A contract] must include the terms specified in an offer to make a contract[,] because an acceptance is effective to create a contract only if it is absolute and unconditional, and identical with the terms of the offer." *Giovo v. McDonald*, 791 So.2d 38 (2001) (citing *Ribich v. Evergreen Sales & Serv., Inc.*, 784 So.2d 1201(Fla. 2d DCA 2001)). In other words, an acceptance must contain an assent to the same matters contained in the offer. *Lickert v. Pike*, 736 So.2d 724 (Fla. 2d DCA 1999) (citing *Mintzberg v. Golestaneh*, 390 So.2d 759 (Fla. 3d DCA 1980)). Because the mortgage note clearly does not mean to secure a promissory note that is the matter of the promissory note Plaintiff claims it secures, where the mortgage note means to secure a promissory note issued in a consumer credit transaction and not one violative of every consumer credit law that ever existed that promissory note and the mortgage note were not issued in sufficient congruence to create a meeting of the minds and a contract at all.

And it's not just that the terms of the mortgage note and terms of the non-compliant promissory note are incongruent, but in paragraphs 19, 20, 22 of the mortgage note the terms of the mortgage note outright contradict the terms of the illegal promissory note. In bold letters paragraph twenty-two of the mortgage note states "**Lender shall give notice to Borrower prior**

to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument, [which] notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured" *Plaintiff's Mortgage Note Exhibit A P 22 (emphasis in original)*. The non-compliant promissory note meanwhile states "if default be made in the payment of any of the sums of interests mentioned herein or in said mortgage the entire principal sum and accrued interest shall at the option of the holder hereof become at one due and collectable, **without notice**, time being of the essence; and [extortionate interest rates credit card companies only wish they could charge accrues]. As the case where "acceptance of personal injury claims but denial of property damage claims was not settlement agreement" the mortgage note Plaintiff seeks to enforce in this action is not in agreement with the promissory note Plaintiff claims the mortgage note secured. While terms in a contract that are essential to "a contract differ according to circumstances" essential terms "must include the terms specified ... to make a contract." *Giovo v. McDonald*, 791 So.2d 38 (2001). Under any credit transaction default, or what follows any failure in performance under the contract is an essential term or the contract. In fact default is likely the most essential term in any credit transaction; it is indeed the term by which all other terms are qualified under the contract. And an agreement whose essential terms contradict one another isn't an agreement at all. *Giovo v. McDonald*, 791 So.2d 38 (2001). The agreement Plaintiff seeks to enforce here is analogous to an agreement for sale between a shop-owner and a shoplifter. It's contradictory at heart; it's either one or the other--- both cannot exist, and a contract as here between two parties each agreeing to a term the other agrees not to permit cannot be an agreement at all---it is almost the exact opposite of an agreement. Thus, the promissory note and the mortgage note never form a contract that is a definite expression of a meeting of the minds, creating an enforceable contract in equity or law, and the contract is simply unenforceable. To put it differently, it's not that the shipowner's contract for sale cannot be enforced with the shoplifter, it's that enforcing the shop-owner's terms requires doing the opposite of what was agreed by the shoplifter, and a contract between the two just isn't possible for performance of the terms one agrees requires violating and contradicting the terms agreed for by the other. As such no contract exists, requiring this suit be dismissed with prejudice for lack

of an enforceable contract that can be enforce by this Court here.

III.     PLAINTIFF HAS NOT SATISFIED ALL CONDITIONS PRECEDENT PRIOR TO
         FILING THIS ACTION.

        Plaintiff has not alleged to have given notice of acceleration as required by paragraph

twenty-two of the mortgage note, supra, prior to filing this action with this Court. In fact,

Plaintiff could not have given notice as required by paragraph twenty-two of the mortgage note

before commencing this suit by virtue of filing this action merely nineteen days after interest first

became due and payable under the illegal promissory note (whereas mortgage note paragraph

twenty-two requires notice be given no less than thirty days prior to any acceleration, let alone

the filing of a suit).

        Similarly Plaintiff has not alleged and could not have complied with paragraph

twenty-two of the mortgage note requiring "that [n]either Borrower nor Lender commence, join,

or be joined to any judicial action ... that arises from the other party's actions pursuant to this

Security Instrument or that alleges that the other party has breached any provision of or any duly

owed by reason of this Security Instrument, until such Borrower or Lender has notified the other

party [with 30 days notice] of such alleged breach and afforded the other parry hereto a

reasonable period after the giving of such notice to take corrective action." *Plaintiff's Mortgage

Note Exhibit A paragraph twenty-two.*

        And whereas Plaintiff in its Complaint claims to have satisfied all conditions precedent

prior to the filing of this Action with this Court, allowing Plaintiff to go back and give notice in

satisfaction of paragraphs twenty and twenty-two of the mortgage note, would amount to

allowing Plaintiff to make inconsistent allegations in this Action, which the Plaintiff is precluded

from doing so. Under the "universal rule," accepted in Florida and "in every other jurisdiction," a

party is "estopped" to assert inconsistent positions in litigation. *Salcedo v. Asociacion Cubana,

Inc.*, 368 So. 2d 1337, 1338 (Fla. 3d DCA 1979). Therefore because Plaintiff has and could not

have complied with paragraphs twenty and twenty two of the mortgage note, and because Plaintiff is estopped from doing so going forth, this Court must dismiss this Case with prejudice under the law of this Court.

Dated this 26th day of August, 2015

X _____

GERTI MUHO
1000 Biscayne Blvd. 5303
Miami, FL 33132
(305) 204-0000
(212) 300-3826
gm@gmcapital.net

STATE OF FLORIDA          )
                          )SS
COUNTY OF MIAMI-DADE      )

   **I HEREBY CERTIFY** that on this day, before me, an officer duly authorized to administer oaths and taken acknowledgements, personally appeared Gerti Muho, known to me to be the person described herein and who executed the foregoing instrument, who acknowledge before me that he executed the same, that I relied upon the following forms of identification of the above-named person: LICENSE

   **WITNESS** my hand and official seal in the County and State last aforesaid, this 26th day of August, A.D., 2015.

MARIA JOSE MAYORGA
Notary Public, State of Florida
Commission #EE 193693
My Commission Expires Apr. 29, 2016

NOTARY PUBLIC,
State of Florida, at Large
My commission expires: Apr. 29, 2016

# EXHIBIT 5

Case 1:15-cv-23884-JAL Document 6 Entered on FLSD Docket 10/23/2015 Page 70 of 70
Case 1:15-cv-23884-JAL Document 1 Entered on FLSD Docket 10/16/2015 Page 47 of 47
Case 2:15-cv-23658-PGH Document 1-2 Entered on FLSD Docket 10/01/2015 Page 148 of 152

*NOTICE of Filing* CA. N.O. 2015-011944-CA

## DESIGNATION OF HOMESTEAD EXEMPTION

**PLEASE TAKE NOTICE** that pursuant to FL ST § 222.02, stating that "[w]hen a levy is made upon the ... home of such person whose homestead has not been set apart and selected, such person ... may in writing notify the officer making such levy, by notice under oath made before any officer of this state duly authorized to administer oaths, *at any time before the day appointed for the sale thereof*, of what such person regards as his or her homestead; *and the remainder only* shall be subject to sale under such levy, I, Gerti Muho, of 1100 Biscayne Boulevard, Apartment 5303, Miami, Florida 33132, whose homestead has not been set apart and selected, *designate the property described below as my homestead, to be exempt from levy and sale under legal process.*

The property designated as my homestead is my apartment at 1100 Biscayne Boulevard, Apartment 5303, Miami, Florida 33132, and described as follows:

CONDOMINIUM UNIT NO. 5303, OF MARQUIS, A CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM RECORDED IN OR BOOK 26920, PAGE 3495, AND ALL EXHIBITS AND AMENDMENTS THEREOF, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Executed on this *22nd of September 2015* under oath made before any officer of this state duly authorized to administer oaths.

by: Gerti Muho

with a copy to:

CEM Investments LLC
Sergio L. Mendez, Esq.
Law Offices of Mendez, P.A.
7400 S.W. 57th Court, St.202
South Miami, FL 33143

Nicholas D. Siegfried
201 Alhambra Cir, 11th Floor
Coral Gables, FL 33134

Lexis II Ltd.
P.O. Box 709
Zephyr House, 122 Mary St.
Grand Cayman KY1-1107,
Cayman Islands

FILED FOR RECORD
2015 SEP 22 PM 3: 19
CLERK CIRCUIT COURT
MIAMI-DADE COUNTY, FLA
CIVIL DIVISION #200